Jean E. Faure (jfaure@faureholden.com)
Jason T. Holden (jholden@faureholden.com)
Faure Holden Attorneys at Law, P.C.
1314 Central Avenue
P.O. Box 2466
Great Falls, MT 59403
Telephone: (406) 452-6500
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| CALUMET MONTANA REFINING, LLC,<br><br>               Plaintiff,<br><br>v.<br><br>MICHAEL S. REGAN, in his official capacity as the Administrator of the United States Environmental Protection Agency,<br><br>               Defendant. | No. 24-cv-00062-BMM<br><br>**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Administrative agencies expect regulated parties to follow statutory deadlines. Reasonably so. This case is about whether that obligation to follow the law goes both ways. The U.S. Environmental Protection Agency ("EPA") concedes that it steadfastly refused to honor an unambiguous statutory deadline. And that failure is imposing tremendous hardship on Plaintiff Calumet Montana Refining, LLC. It is a sad commentary on EPA that Calumet has been forced to sue an agency just to get it to follow the plain requirements of the law.

Calumet is a small petroleum refinery in Great Falls, Montana. The Clean Air Act imposes an enormously burdensome regulatory obligation called the

- 1 -

Renewable Fuel Standard ("RFS") on refiners and importers of transportation fuel. 42 U.S.C. § 7545(o).[1] But Congress also provided an exemption to those obligations for small refineries like Calumet that would experience "disproportionate economic hardship" if required to comply with the RFS. § 7545(o)(9)(B)(i); *see id.* § 7545(o)(9)(A)(ii); *see also HollyFrontier Cheyenne Refin., LLC* v. *Renewable Fuels Ass'n*, 594 U.S. 382 (2021). The Clean Air Act expressly provides that a small refinery may petition at any time for hardship relief and that EPA must act on a small refinery's hardship petition within 90 days of receipt. § 7545(o)(9) (B)(iii). That is because, as EPA has previously acknowledged, it is critical for a small refinery like Calumet to know in a timely manner whether it will receive hardship relief for a given compliance year. *See* 87 Fed. Reg. 5696, at 5699-5700 (Feb. 2, 2022).

Calumet has consistently applied for hardship relief in the past by demonstrating that the RFS causes it disproportionate economic hardship. And EPA has consistently granted Calumet's hardship petitions in prior years. In 2022, however, EPA changed course and attempted to eliminate small-refinery hardship relief by simultaneously denying *all* small refineries' pending hardship petitions for the 2018 through 2021 compliance years--including Calumet's. The D.C. Circuit has determined that EPA's decision denying those hardship petitions was unlawful several times over. *See Sinclair Wyoming Refin. Co. LLC* v. *EPA*, __ F.4th __, No. 22-1073, 2024 WL 3801747, at *1 (D.C. Cir. 2024). The Fifth

---

[1] All citations to the U.S. code are to Title 42 unless otherwise noted.

Circuit reached the same conclusion in a case involving other small refineries. *Calumet Shreveport Refin., LLC* v. *EPA*, 86 F.4th 1121, 1127 (5th Cir. 2023).

Now EPA refuses even to act on Calumet's pending hardship petition for the 2023 compliance year, even though the Clean Air Act unambiguously requires EPA to have decided that petition by no later than March 13, 2024--more than six months ago. § 7545(o)(9)(B)(iii). EPA admits that it broke the law by refusing to decide Calumet's hardship petition on time. And that failure is causing devastating harm to Calumet, which is forced to carry a massive liability on its books related to the RFS until EPA acknowledges Calumet's disproportionate economic hardship.

Both before and after filing the Complaint in this action, Calumet has attempted to engage with EPA to reach a resolution that would avoid the need for litigation. Unfortunately, EPA has been totally unwilling to commit to performing its statutory duty to decide Calumet's hardship petition (and those of many other small refineries). And it is no exaggeration to say that the agency's position on its clear-as-can-be legal violation amounts to: "We don't care." EPA has made it clear that, unless it is ordered by this Court to expeditiously decide the pending hardship petition, it will not do so.

Calumet asks the Court to order EPA to decide its hardship petition no later than December 13, 2024 so that Calumet will have a fighting chance of managing its upcoming compliance deadline of March 31, 2025. EPA has now had Calumet's hardship petition *more than three times longer* than Congress allows. That is more than enough time. EPA's delays have already harmed Calumet and will continue to do so if the agency is permitted to continue violating the Clean Air Act unchecked.

EPA's outright refusal to comply with its statutory 90-day deadline, and its history of similar noncompliance, make clear that only an order from this Court setting a specific deadline for EPA to act can adequately remedy the situation.

## BACKGROUND

### A. Calumet's Refinery

Calumet owns a petroleum refinery in Great Falls, Montana that converts crude oil into transportation fuel. Declaration of Bruce Fleming ("Fleming Decl.") ¶ 3. That refinery's average daily aggregate crude oil throughput does not exceed 75,000 barrels, *id.*, so it qualifies as a "small refinery" under the Clean Air Act. § 7545(o)(1)(K). In fact, its current crude oil throughput is 15,000 barrels per day, which makes it one of the smallest refineries that still survives in the United States. Fleming Decl. ¶ 3.

### B. The RFS Program

Congress amended the Clean Air Act to establish the RFS program in 2005 and 2007. § 7545(o); *see* Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat 594; Energy Independence and Security Act of 2007, Pub. L. No. 110-140, 121 Stat. 1492. The Act requires that transportation fuel sold or introduced into commerce in the United States contain specified volumes of renewable fuel. EPA and its Administrator set the volumes and oversee this requirement as part of their administration of the RFS program. *See* § 7545(o).

Obligated parties demonstrate compliance with the RFS by obtaining and tendering to EPA blending credits called "RINs." 40 C.F.R. § 80.1427. RINs are created when biofuel is manufactured. *Id.* § 80.1426. RINs remain "attached" to

the physical volume of biofuel until blended into petroleum-based fuel, when RINs are "separated." *Id.* §§ 80.1428, 80.1429. "Separated" RINs are ultimately tendered by obligated parties to EPA to demonstrate compliance. *Id.* § 80.1427(a)(8).

"Many obligated parties"--especially small refineries--"do not have access to renewable fuels or the ability to blend them, and so must use credits to comply." 72 Fed. Reg. 23,900, 23,904 (May 1, 2007). Obligated parties that cannot self-generate enough RINs by blending are forced to buy RINs from others holding them.

"The RFS program reflects a carefully crafted legislative bargain to promote renewable fuels, but also to provide an exemption mechanism for small refineries." *Sinclair Wyoming*, 2024 WL 3801747, at *10. Congress recognized that "escalating [RFS] obligations could work special burdens on small refineries that lack the inherent scale advantages of large refineries." *HollyFrontier*, 594 U.S. at 386-387 (citation omitted). So Congress created a "safety valve," *id.* at 397: "A small refinery may at any time petition [EPA]" for an "exemption" from its RFS obligation by showing that it would suffer a "disproportionate economic hardship" if required to comply with the RFS. § 7545(o)(9)(B)(i); *see also* § 7545(o)(9)(A)(ii)(II). EPA must decide each hardship petition "not later than 90 days after" receiving it. § 7545(o)(9)(B)(iii).

C. **Calumet Petitions for Hardship Relief, but EPA Refuses to Respond.**

As a producer of transportation fuel, Calumet is subject to the RFS program's requirements. § 7545(o)(2)(A)(iii)(I), (3)(B)(ii)(I). But Calumet is just

the kind of small refinery that Congress created the hardship exemption to protect. Before EPA set out to eliminate the small-refinery hardship relief that Congress created, EPA had consistently granted Calumet's petitions for hardship relief. Fleming Decl. ¶ 4. Calumet continued to experience disproportionate economic hardship from the RFS in the 2023 compliance year, so it petitioned for hardship relief from its 2023 RFS obligation. Fleming Decl. ¶ 8. That petition explained why Calumet qualified for hardship relief again for 2023.

EPA received Calumet's petition on December 14, 2023. Fleming Decl. ¶ 8; Answer ¶ 20. That meant that EPA had a statutory obligation to decide that petition by March 13, 2024. § 7545(o)(9)(B)(iii). EPA's March 13 deadline to act on Calumet's 2023 hardship petition fell just 18 days before the March 31 deadline when EPA would demand that refineries like Calumet demonstrate their RFS compliance for 2023. *See* 87 Fed. Reg. at 5700–5701. EPA has a history of disregarding the 90-day statutory deadline to decide Calumet's hardship petitions. For example, EPA decided Calumet's 2019 hardship petition 860 days late. Fleming Decl. ¶ 14 (table). In fact, since 2018, the fastest that EPA has decided one of Calumet's petitions was 265 days after receiving it--nearly three times longer than Congress allows. *Id*.; § 7545(o)(9)(B)(iii). And what's more, such delays have unfortunately become the norm for EPA across the country. In a recent report, the United States Government Accountability Office ("GAO") found that EPA has decided nearly *90%* of all small refinery hardship petitions late since 2013 and that for the 2019 compliance year EPA decided the petitions "on average,

more than 700 days" after receiving them, or 610 days after the statutory deadline.[2]

Given EPA's track record and the requirement that Calumet give the Administrator 60-days' notice before suing to compel him to act, § 7604(b)(2), Calumet originally gave notice 60 days before the 90-day statutory decision deadline had run, Fleming Decl. ¶ 9. That way, Calumet would have the opportunity to seek judicial relief for the Administrator's delay before the 2023 compliance deadline.

On January 19, 2024, Calumet gave EPA that written notice under § 7604(b)(2) and 40 C.F.R. §§ 54.2–54.3. Fleming Decl. ¶ 9. Despite receiving that notice, the Administrator still had not acted on Calumet's 2023 small refinery hardship petition within the 90-day statutory deadline or within 60 days after Calumet's original written notice of its intent to sue. *See* § 7604(b)(2). So Calumet immediately brought suit in this Court. *Calumet Montana Refining, LLC* v. *Michael S. Regan*, No. 24-cv-28, ECF No. 1 (Mar. 20, 2024).

During that litigation, EPA communicated to Calumet that EPA believed Calumet's original notice of intent to sue was defective because it had been issued prior to the running of the 90-day statutory decision deadline. That is, EPA argued that although it admittedly broke the law, it received notice *too early* from Calumet about its breach. Calumet disagrees with EPA on that point. But in an effort to avoid this case getting sidetracked on an unnecessary dispute over notice, Calumet

---

[2] GAO, Renewable Fuel Standard: Actions Needed to Improve Decision-Making in the Small Refinery Exemption Program, GAO-23-104273, at 20, 48 (Nov. 3, 2022) ("GAO Report"), https://www.gao.gov/products/gao-23-104273.

voluntarily dismissed its original complaint, *id*., ECF No. 24, and sent EPA a new notice of intent to sue on April 25, 2024. Fleming Decl. ¶ 10; Answer ¶ 10. In the notice, Calumet "urge[d] the Administrator to decide [Calumet's] 2023 hardship petition immediately, in order to avoid the need for litigation." Compl. Ex. A.

After another 60 days passed without the Administrator deciding Calumet's 2023 hardship petition, Calumet brought this suit. *See* Complaint (filed July 3, 2023). The statutory deadline passed over 200 days ago, and EPA received Calumet's 2023 hardship petition nearly 300 days ago. Fleming Decl. ¶ 14; § 7545(o)(9)(B)(iii).

## ARGUMENT

**I.     EPA Concededly Violated, and Continues to Violate, the Clean Air Act.**

Remarkably, nothing in the Background recounted above is meaningfully disputed by the agency. EPA admitted to this Court in its Answer that it broke the law by refusing to decide Calumet's hardship petition by the statutory deadline. But EPA *still* will not act to prevent the ongoing harm to Calumet. And it wants this Court to give it permission to continue to refuse to act.

The Court should not. The Clean Air Act authorizes this Court "to compel" EPA "to perform any act or duty under [the Clean Air Act] which is not discretionary." § 7604(a). And the Administrative Procedure Act empowers this Court to "compel agency action unlawfully withheld," 5 U.S.C. § 706(1), that is, "to take a discrete agency action that it is required to take," *Norton* v. *S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis omitted). Other federal district courts have recognized that the Clean Air Act "unequivocally" imposes a non-

- 8 -

discretionary duty on EPA, *Delek US Holdings, Inc.* v. *Regan*, No. 21-2223, 2022 WL 18455981, at *2 (D.D.C. May 12, 2022) (Pan, J.), to decide small refinery hardship petitions "not later than 90 days after the date of receipt of the petition," § 7545(o)(9)(B)(iii). EPA's failure to take that "discrete agency action" within the 90-day statutory deadline is agency action unlawfully withheld. *See Norton*, 542 U.S. at 64; § 7545(o)(9)(B)(iii).

EPA concedes that it did not decide Calumet's petition within the 90-day statutory deadline. Answer ¶ 34. Despite that concession, EPA still has not decided Calumet's petition, nearly 300 days after "receipt of the petition." Compl. ¶¶ 20, 24, 27; Answer ¶¶ 20, 24, 27. Without any dispute as to these material facts, EPA's decision to continue to unlawfully withhold a decision on Calumet's 2023 hardship petition warrants summary judgment in Calumet's favor. And it is settled that this Court has authority to issue an order determining by when EPA must act. *See Nat. Res. Def. Council, Inc.* v. *Train*, 510 F.2d 692, 704 (D.C. Cir. 1974); *Delek*, 2022 WL 18455981.

## II. This Court Should Order EPA to Decide Calumet's Hardship Petition by December 13, 2024.

With EPA's violation of the Clean Air Act conceded, EPA agrees that the only contested question is remedy. This Court should order EPA to decide Calumet's hardship petition by no later than December 13, 2024. EPA has already had more than enough time to decide Calumet's petition--more than three times longer than the statute allows. And EPA's continued delay severely and unreasonably harms Calumet. A decision by December 13 is critically important

because, with it, Calumet would have an opportunity to go to the court of appeals (as it has successfully in the past) to obtain a stay in time for the upcoming March 31, 2025 RFS compliance deadline.

### A. EPA has had more than enough time to decide Calumet's petition.

The Clean Air Act imposes a mandatory and nondiscretionary 90-day deadline on EPA to decide small refinery hardship petitions. § 7545(o)(9)(B)(iii). In Congress's considered judgment, 90 days is the reasonable amount of time for EPA to fulfill its statutory duty. The statute does not provide any wiggle room for EPA (or courts) to extend the deadline. *See id.* Here, that 90-day deadline was March 13, 2024. § 7545(o)(9)(B)(iii). About two months before that deadline, Calumet reminded EPA of its obligation. Fleming Decl. ¶ 9. Despite that reminder, March 13 came and went without any decision from EPA. So Calumet sued to compel EPA to act. *Calumet Montana*, No. 24-cv-28, ECF No. 1 (Complaint). Still, EPA did not act. After dismissing the lawsuit for the reasons explained above, Calumet sent EPA another notice of intent to sue on April 25, giving EPA another 60 days--until June 24--to decide Calumet's petition before litigation would commence. Fleming Decl. ¶ 10. Again, EPA did not act. With all other options exhausted, Calumet filed this lawsuit the following week. Compl. (filed July 3, 2024).

As of the date of this motion, EPA has had Calumet's hardship petition for 295 days without deciding it--more than *three times* longer than Congress allows. § 7545(o)(9)(B)(iii). That means EPA is over 200 days late. That is more than enough time to decide Calumet's hardship petition. But as explained above, these

unlawful delays have unfortunately become commonplace for EPA. GAO Report 48; Fleming Decl. ¶ 14 (table). EPA's repeated disregard for Congress's command demonstrates that it will not comply with the statute's decision deadline unless this Court compels it to.

### B. EPA's delay has harmed and will continue to harm Calumet.

The equities overwhelmingly favor the Court compelling EPA to decide Calumet's hardship decision by December 13, 2024.

**1.** For one, EPA's delay has deprived Calumet of an essential--and statutorily guaranteed--compliance tool. Congress recognized the significant burden that the RFS program imposes on obligated parties, so it provided them with compliance flexibility by allowing each obligated party to "carry forward" its obligation for one compliance year to the "following year." Fleming Decl. ¶ 16; § 7545(o)(5)(D). But an obligated party can use this carry-forward provision only if it "achieves compliance" in that second year. § 7545(o)(5)(D)(i). In other words, an obligated party cannot carry forward a deficient two years in a row. *See* 40 C.F.R. § 80.1427(b). And if a party does not satisfy its RFS obligation in a given year, then EPA says that the party is automatically "presumed to be carrying over a deficient into the following year," even if the party did not request that EPA do so.[3]

---

[3] https://www.epa.gov/fuels-registration-reporting-and-compliance-help/i-understand-under-caa-section-211o-compliance-can ("An obligated party will be presumed to be carrying over a deficit into the following year if they do not comply for the current year, and no enforcement action will be taken."); *see also* 40 C.F.R. § 80.1427(b).

EPA has not decided Calumet's 2023 petition. And even though it refused to do so, EPA demanded that Calumet demonstrate compliance for 2023, back in March of 2024. Calumet was not able to generate or acquire sufficient RINs for compliance--which is the very reason why it needed to petition for hardship relief. EPA has thus suggested in correspondence that, when the 2023 deadline came and went, Calumet automatically carried forward its deficient.

To be clear, Calumet does not concede that it actually carried forward a deficit for 2023. But the important point for present purposes is that EPA *views* Calumet as having carried forward a deficit. As a result, EPA will assert that Calumet "spent" the carry-forward provision in March 2024 and will demand that Calumet must comply for both 2023 and 2024 at the 2024 compliance deadline that is upcoming in March 2025. § 7545(o)(5)(D)(i); 40 C.F.R. § 80.1427(b).

Calumet needs this Court to order EPA to act promptly in light of the upcoming March 2025 compliance deadline. That is why it is so imperative that the Court order EPA to act by December 13. If EPA does act, then it may grant Calumet's 2023 hardship petition (the correct course) and Calumet will be able to use its deficit carry-forward option for 2024 compliance in March 2025.[4] Alternatively, if EPA denies Calumet's 2023 hardship petition (contrary to law) by December 13, then Calumet would still have an opportunity to request a stay of its compliance obligation from the court of appeals in time for the March compliance

---

[4] Calumet has also petitioned for hardship relief for 2024 based on disproportionate economic hardship. While 90 days have passed, EPA has not decided that petition, either. And it will not commit to Calumet when it will do so.

deadline. Calumet has received multiple stays of prior unlawful EPA orders denying Calumet hardship relief. Order, *Sinclair Wyoming Refin. Co. LLC* v. *EPA*, No. 22-1073 (and consolidated cases), Doc. 1992426 (D.C. Cir. Mar. 30, 2023); Order, *Calumet Montana Refin., LLC* v. *EPA*, No. 23-1194, Doc. 2023350 (D.C. Cir. Oct. 23, 2023). It would likely secure a stay again if EPA denies Calumet's 2023 hardship petition. But obtaining a stay requires that EPA actually decide Calumet's hardship petition, in order to create jurisdiction in the court of appeals. So long as EPA is required to act by December 13, Calumet will have a fighting chance of getting judicial relief in time for the March 2025 deadline.

2.   EPA itself has long "recognize[d]" that "obligated parties" cannot adequately "plan[] their compliance for a given calendar year [until they] understand[] their obligations for the years before and after." 87 Fed. Reg. at 5699–5700. If EPA had decided Calumet's hardship petition on time, then Calumet would have known whether it has an RFS "obligation" for 2023 in early 2024 and might have been able to plan for compliance. *Id.* Instead, 2024 is now nearly over and Calumet needs to turn its attention to 2025 compliance, yet Calumet still does not know whether it has an obligation "for the year[] before." *Id.* Calumet's deadline to demonstrate compliance for 2024 is March 31, 2025. EPA must decide Calumet's 2023 hardship petition as soon as possible to give Calumet *some* ability to assess compliance.

3.   EPA's delays also cause devastating uncertainty for Calumet. Based on the multiple court decisions rejecting EPA's reasoning last time around, the resolution of Calumet's petitions for compliance years *2018–2022* remain up in the

- 13 -

air. Fleming Decl. ¶ 7. Not only did EPA delay its initial decisions on those hardship petitions, Fleming Decl. ¶ 14 (table), when it did act it did so unlawfully: its decisions to deny those petitions were recently held to be "contrary to law and arbitrary and capricious." *Sinclair Wyoming*, 2024 WL 3801747, at *1; *Calumet Shreveport*, 86 F.4th at 1127 (holding EPA's same approach unlawful as to other small refinery petitions). Accordingly, the petitions have been returned to EPA for a proper resolution. *Sinclair Wyoming*, 2024 WL 3801747, at *24. In the meantime, those substantial, unresolved compliance obligations sit on Calumet's books as debt. Fleming Decl. ¶ 19.

That debt and uncertainty severely harm Calumet in at least two ways. First, Calumet ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Fleming Decl. ¶ 20. Second, EPA is destroying Calumet's credit and its market value. On March 25, 2024, Moody's rating agency downgraded the Company's rating to "Caa1," in part because "[t]he company has a potential material liability if it is required to purchase RINs to demonstrate compliance with the [RFS], but it is currently engaged in litigation seeking exemptions from the RFS for its refineries." Fleming Decl. ¶ 21. Companies rated "Caa1" by Moody's are "judged to be of poor standing and are subject to very high credit risk," and the value of the Corporation has fallen sharply in sympathy with Moody's announcement. *Id*. EPA's concededly unlawful delay perpetuates that destructive uncertainty and forces

Calumet to continue to carry an addition ▮▮▮▮▮ of 2023 RIN liability as debt on its books. Fleming Decl. ¶¶ 18, 19, 22.

EPA has been aware *for years* of the dire consequences its actions have had on Calumet. The D.C. Circuit has twice granted Calumet a stay to avoid the irreparable harm caused by EPA's actions. Order, *Sinclair Wyoming*, No. 22-1073, Doc. 1992426 (D.C. Cir. Mar. 30, 2023); Order, *Calumet Montana*, No. 23-1194, Doc. 2023350 (D.C. Cir. Oct. 23, 2023).

Given these dire consequences to Calumet and EPA's keen awareness of them, EPA's persistent refusal to act is not just unlawful, it is outrageous. It must end now. EPA's history of lengthy delays in deciding Calumet's and other small refineries' hardship petitions, and EPA's continued refusal to decide Calumet's 2023 petition despite this litigation, make clear that the agency will continue to defy the law unless this Court orders EPA to comply by a date certain.

\* \* \*

Fortunately, Congress gave this Court authority to mitigate Calumet's harms by forcing EPA to act. § 7604(a); 5 U.S.C. § 706(1). The Court should do so to ensure that the agency does not "shirk[ ] its duties by reason of mere difficulty or inconvenience." *American Hosp. Ass'n* v. *Price*, 867 F.3d 160, 168 (D.C. Cir. 2017). The Court should order EPA to decide Calumet's 2023 hardship petition by December 13, 2024. Doing so will enable Calumet, at a minimum, to seek a judicial stay in time for the upcoming March 2025 compliance deadline. By December 13, EPA will have had 365 days--a full year--to decide Calumet's petition. It will be 275 days late. That is a more than enough time for EPA to

finally comply with the statute.

## CONCLUSION

EPA's conceded violation of the law is harming Calumet. The Court should remedy that violation and mitigate the harm by ordering EPA to decide Calumet's 2023 hardship petition by no later than December 13, 2024.

Dated October 4, 2024.

/s/ Jean E. Faure
Jean E. Faure
Faure Holden Attorneys at Law, P.C.
Attorneys for Plaintiff *Attorneys for Calumet Montana Refining, LLC*